IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00059-RBJ-MEH

FOOTHILLS CREATIONS LTD, a Colorado corporation,

    Plaintiff,

v.

BILLY BOB TEETH, INC., an Illinois corporation,

    Defendant.

---

**ORDER ON CLAIMS CONSTRUCTION**

---

The parties initially requested that the Court construe certain disputed terms in one utility patent and one design patent. The issues have been fully briefed and were the subject of a "Markman hearing" held on January 26, 2012. The Court has now been informed that plaintiff is withdrawing its claims concerning the design patent. This order construes the disputed terms in the utility patent.

**FACTS**

Foothills Creations LTD ("Foothills"), a Colorado corporation, designs, develops and sells artificial teeth typically used by partygoers attempting to conjure in observers' minds the image of a vampire or wild beast. Donald W. Nutting, a shareholder in Foothills and the inventor of plaintiff's products and application method, designed and developed the products in 1993 and 1994. He filed a patent application for his invention in 1994 and Patent No. 5,547,381 ("the '381 Patent") issued from this application on August 20, 1996.

Billy Bob Teeth, Inc. ("Billy Bob"), an Illinois corporation, is likewise in the business of designing, developing and selling artificial teeth to be used by persons bent on creating the

1

appearance of vampires, wild beasts and other miscellaneous characters and creatures. Defendant produces products called "Triple Vampire Fangs," "Triple Werewolf Fangs" and "Double Vampire Fangs," which are alleged to infringe on either one or both of the '381 Patent and '509 Patent. Plaintiff further alleges defendant's "impression material" – used to attach the artificial teeth to a person's real teeth – and defendant's proposed method of application of the artificial teeth, infringe on the '381 Patent. The Court must construct the claims before any infringement analysis can be undertaken at a later time.

### CLAIM CONSTRUCTION.

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-91 (1996). The objective is to give disputed terms in a patent claim the meaning that a person of ordinary skill in the relevant art would have given them at the time of the invention unless the patent applicant has clearly and unambiguously defined the terms differently. *See, e.g., Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 493 F.3d 1358, 1361 (Fed. Cir. 2007).

The Court principally considers "intrinsic evidence," i.e., the words of the claim itself in the context of the entire patent including as relevant the specification and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006). The specification is "the single best guide to the meaning of a disputed term." *Vitrionics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). The court may not, however, read limitations from the specification, particularly the disclosed embodiments, into the claim. *Phillips,* 415 F. 3d at 1323-24.

"Extrinsic evidence" such as dictionaries, treatises and, in some cases, expert testimony can also be considered, although such evidence generally should be given less weight than

intrinsic evidence. *Phillips,* 415 F.3d at 1317-19. In the present case the parties rely both on intrinsic and extrinsic evidence.

### '381 Patent

This patent has the title, "Fangs and Application thereof." The invention "relates to a tooth cap body and a method of applying the tooth cap body to a person's real teeth." Col. 1: 7-8. Thermoplastic material that is initially malleable is placed in the tooth cap body. The malleable material conforms to surface features within the tooth cap body. When the user bites into the tooth cap body, a portion of the malleable material is displaced and can be formed around adjacent teeth. Upon hardening, the thermoplastic material permits the tooth cap body to be anchored to the real tooth, thereupon improving on prior art which presented the problem of the tooth cap body's falling out causing embarrassment to the user. The '381 Patent includes 15 claims, but the disputed terms requiring construction are identified only in Claims 1, 5 and 6.

**A. The Claims.**

### Claim 1

Claim 1 reads as follows (disputed terms bolded):

Tooth extension apparatus for extending a person's real *tooth* in length to have the appearance of an animal fang, *comprising*:

*a tooth cap body* that has an outside surface, an inside surface, a front side, and a back side, said outside surface having a smoothly curved convex shape and said inside surface having a cavity extending therein toward said outside surface from *a peripheral rim that* substantially surrounds said cavity and *forms said front side and said back side*, said cavity conforming in size and shape to a lateral side of said real tooth and adapted to receive said lateral side of said real tooth when said tooth cap body is juxtaposed to said real tooth, said tooth cap body also having *an extension that protrudes downwardly below said cavity and converging to a tip*, and a lip protruding from said inside surface under said cavity to form a trough at the bottom of said cavity and adapted for receiving and *retaining* an extremity edge of the person's real tooth when said tooth cap body is juxtaposed to said real tooth and said lateral side of said real tooth is received in said cavity; and

an initially malleable, but hardenable material of *a quantity that is more than enough to fill said cavity*, a first portion of said material being placed in said cavity and adapted to be partially displaced by said lateral side of said real tooth when said lateral side of said real tooth is received in said cavity, and a second portion of said material extending from said first portion out of said cavity to a sufficient extent to be *formable* around additional teeth that are adjacent said person's real tooth.

### Claim 5

A method of extending a person's real *tooth* to have the appearance of an animal fang, *comprising* the steps of:

positioning a first portion of an initially malleable, but hardenable material in a cavity in *a tooth cap* that conforms in size and shape to the lateral side of the person's real tooth and *that extends downwardly below the cavity to a tip* and has a lip that protrudes inwardly and upwardly from the bottom of the cavity to form a trough;

*extending* a second portion of the initially malleable but hardenable material from said first portion outside said cavity;

juxtaposing said tooth cap with the person's real tooth in such a manner that the lateral side of the person's real tooth is received into said cavity and displaces some of said first portion of the initially malleable, but hardenable material and such that an extremity edge of the person's real tooth seats in said trough;

*forming* said second portion of said initially malleable, but hardenable material around other ones of the person's teeth adjacent the person's real tooth that is being extended; and

*hardening* said initially malleable, but hardenable material.

### Claim 6

A method of anchoring a tooth cap to a real *tooth*, *comprising* the steps of:

providing a tooth cap having a cavity with *surface features*;

placing an amount of malleable material into said cavity of said tooth cap;

positioning said tooth cap onto said real tooth so that said malleable material is forced to envelop said *surface features* in said cavity;

*shaping* any excess of said malleable material that is forced out of said tooth cap when said tooth cap is positioned onto said real tooth to conform said malleable material to teeth adjacent said real tooth; and

allowing said malleable material to harden so that said malleable material is securely anchored to said tooth cap.

**B. Construction.**

1. "<u>tooth</u>" and "<u>a tooth cap body</u>"

In the Joint Claim Construction Statement, Foothills proposed that "tooth" does not require construction, and that "tooth cap body" should be construed to mean "at least one tooth cap body." Billy Bob proposes that "tooth" be construed to mean "a single tooth," and that "a tooth cap body" be construed to mean "a single tooth cap body." This dispute appears to be at the heart of the case. The Court agrees with Billy Bob's suggestion that it is helpful to understand the nature of the dispute by viewing its accused product. As illustrated at page 3 of Billy Bob's claims construction brief, Billy Bob's product has two or three caps in a single unit. The preferred embodiment depicted in the drawings of Foothills' '381 patent consists of a one cap.

It does not require a Court's construction to know that, in plain English, "tooth" means one tooth, whereas "teeth" means two or more teeth. Defendant therefore proposes "a single tooth" and "a single tooth cap body," arguing that this is the ordinary and customary meaning of the terms, and that it is supported by the abstract and throughout the specification. Col. 1: 23-31; Col. 1: 40-47; Col. 1: 52-56; Col. 2: 2-8; Col. 2: 20-23; Col. 2: 52-54: Col. 2:62-66; Col. 3: 7-12; Col. 3: 57-60; and Figs 1-3. Defendant further relies on the parties' stipulation that "teeth" does mean "two or more teeth" and notes plaintiff's argument that placing "single" before "tooth" would be redundant. Moreover, defendant argues that according to *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008), "precedent instructs that different claim terms are presumed to have different meanings." Finally, defendant relies on Judge Babcock's previous interpretation of claims in the '381 patent in *Nutting v. RAM Southwest, Inc.*,

5

*et al.*, 98-B-2360 (D. Colo. April 20, 2000, p. 10-11). The court there concluded, and the parties here stipulate, that "teeth" means "two or more teeth." *Id*. Judge Babcock also distinguished "teeth" from "tooth," implying that "tooth" is singular while "teeth" is plural, consistent with the ordinary and customary meaning of the words.

The Court agrees with Judge Babcock that the ordinary and customary meaning of the terms lends support to construing "tooth" as singular. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). That does not, however, necessarily mean that the present invention is limited to a single tooth or a single tooth cap. When the terms "a tooth" and "a tooth cap" are considered in the context of the use of the transition "comprising," "tooth" can mean, and the Court holds that it does mean, "one or more teeth" for purposes of construction of this patent, as discussed below.

2. "comprising"

Foothills proposes "including" and argues the term is "open-ended in that it does not exclude additional, unrecited elements or steps." Billy Bob Teeth proposes "[t]his term needs no construction."

"Comprising" is a transitional term which links a patent's preamble to the elements set forth in the claim. As the Court noted at the Markman hearing, it agrees with plaintiff that "comprising" creates an open-ended claim. The question is what effect, if any, the term "comprising" has on the terms "tooth" and "a tooth cap body" used in Claim 1.

Foothills proposes that, read in conjunction with the indefinite article "a," "comprising" should lead the Court to construe "a" as "one or more." *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (recognizing the rule in patent law that absent a clear intention otherwise, "a" or "an" carries the meaning "one or more in open-ended claims

6

containing the transitional phrase 'comprising'")(internal citations omitted). *See generally KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000); *Abtox, Inc. v. Exitron Corp.*, 122 F. 3d 1019 (Fed. Cir. 1997).

Billy Bob argues that the consistent use of the terms "tooth" and "tooth cap body" throughout the claim and specification evince a clear intent on the part of the patentee to limit his claim to a single tooth and a single tooth cap body. Billy Bob further notes that "[n]owhere does the '381 Patent claim, explicitly discuss, or implicitly refer to any cap body for more than a single tooth." Brief at 6. As noted above, Billy Bob cites Judge Babcock's ruling; the presumption that different terms should have different meanings; and the teaching from *Merck & Co. v. Teva Phamrs. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005), that "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Id.* at 372.

Billy Bob also relies on *August Tech. Corp. et al., v. Camtek, Ltd.*, 655 F.3d 1278 (Fed. Cir. 2011) and *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996). *August Tech* involved "a method for inspecting integrated circuits printed on substrates such as wafers." 655 F.3d at 1282. The claim distinguished between "a wafer" and "a plurality of wafers." The distinction was significant because, among other things, the claim required "'visual inputting a plurality of known good quality wafers during training' to teach the system a standard for detecting defects." *Id.* at 1283. In that context, defining "a wafer" to mean something different than "a plurality of wafers" was necessary to give meaning to all terms of the claim. *Id.* at 1284.

*Insituform* involved a process for repairing underground pipes without digging them up. A flexible tubular lining containing an impermeable plastic inner layer and a thick felt outer layer is inserted into the pipe. Prior to insertion the felt is impregnated with resin as air is drawn

from the felt creating a vacuum. The vacuum is applied through a hose attached to a suction cup that attaches to a series of cuts in the wall of the tube. When one section of the tube has been impregnated, "the suction cup" is removed to a downstream cut and reapplied in like manner at intervals until complete impregnation of the tube is achieved. The accused patent allegedly improved on the process by using a series of cups. The court determined that "a cup" and "the cup" signaled one cup in contrast with the accused patent's use of multiple cups. Significantly, however, the decision did not turn solely on the distinction between singular and plural. Rather, in the plaintiff's process the vacuum is drawn in a "region of vacuum application" and then interrupted by the movement of "the cup" from window to window, i.e., from region to region. The accused process maintains a continuous vacuum. 99 F.3d at 1105-06. The court concluded that "the only correct and indeed the reasonable interpretation of Claim 1 limits the scope of that claim to a process using only on vacuum cup which inherently creates a discontinuous process. *Id.* at 1106.

This Court does not find *August Technology* or *Insituform* to be dispositive. *August Tech* addressed a claim containing terms that necessarily compelled different definitions based on their usage. Likewise, in *Insituform*, the court could not logically construe "a cup" to mean "one or more" in light of the discontinuous vacuum design. In the present case, however, construing "a tooth" or "a tooth cap body" to mean one or more teeth or tooth cap bodies does not create the potential inherent inconsistencies faced by those courts. The invention here is the concept of a tooth cap body into which malleable material will be inserted, followed by the insertion of a real tooth, displacing still malleable material that then can be formed around adjacent teeth to create an anchor when the material hardens. Specification, Col 1: 40-59. Whether the invention is

applied to a single tooth, as illustrated in the preferred embodiment, or more than one tooth, it utilizes the same idea and method.

In short, while the Court agrees that "tooth" and "tooth cap body" are grammatically singular, in this open-ended claim there is nothing that expresses a clear intention that "a" tooth or "a" "tooth cap body" would not be construed by one of ordinary skill in the art to mean "one or more." *See Baldwin Graphic Systems,* 512 F.3d at 1342.  This construction is not inconsistent with Judge Babcock's holding that "teeth" means two or more teeth, nor does it defy the presumption that different terms in a patent ordinarily have different meanings.

Billy Bob's argument that Foothills' patent is devoid of explicit or implicit reference to "any cap body for more than a single tooth" is unavailing.  Courts have long held that "even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).  No such words or expressions are present in the '381 Patent.

    3.   "<u>a peripheral rim that</u>" "<u>forms said front side and said back side</u>"

Foothills proposes that the peripheral rim is "where the front side and back side come together."  Billy Bob Teeth proposes that "a peripheral rim that . . . forms said front side and said back side" is indefinite under 35 U.S.C. § 112(2).  As a preliminary matter the Court notes that the full quote from Claim 1 is "a peripheral rim that substantially surrounds said cavity and forms said front side and said back side . . . ."  Col. 4: 29-31.

The Federal Circuit has held that "only claims not amenable to construction or insolubly ambiguous are indefinite." *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (internal citations omitted). The Court cannot find a claim to be indefinite solely because the task is "formidable and the conclusion may be one over which reasonable persons will disagree." *Id.* Here, Foothills acknowledges – and the Court agrees – that the patent is poorly worded. However, it is not so insolubly ambiguous as to be indefinite under 35 U.S.C. § 112(2). It is rather obvious that the peripheral rim of the tooth cap body is formed where the front and back of the tooth cap body are joined. The Court concludes that a person of ordinary skill in the art would easily understand upon reading "a peripheral rim that substantially surrounds said cavity and forms said front side and said back side . . . ." in the context of Claim 1 that the peripheral rim is "where the front side and back side come together."

    4.  "<u>an extension that protrudes downwardly below said cavity and converging to a tip</u>"

Foothills proposes this term requires no construction. Billy Bob proposed in the Joint Claim Construction Statement that the term should be construed to mean "[a]n additional solid element, separate from the cavity, that protrudes downwardly below the cavity and converges to a tip." At the hearing Billy Bob's counsel clarified that the term "solid" is not necessary to its proposed construction. Counsel proposed substituting the term "material" for "solid." The bottom line is that Billy Bob wants the term construed in such a way that the '381 Patent only covers products where a person's real tooth is artificially – not on account of the fake tooth's taper – prevented from reaching the bottom of the fake tooth by means of a trough, which necessarily creates a distinct material element – the fang – below the cavity in which a person's real tooth sits. When asked directly whether Foothills agreed that the "trough," or a ridge,

10

blocking the real tooth from reaching the bottom of the fake tooth was part of the invention, Foothills' response was unhelpful.

The Court concludes that the phrase "an extension that protrudes downwardly below said cavity and converging to a tip" needs no construction. The Court understands its task is to construe the terms in light of what one skilled in the ordinary art would understand the patent to cover. *Datamize*, 417 F.3d at 1349. The Court concludes, based on the claim language, that such a person would necessarily consider the patent to require a distinct portion of the artificial tooth to protrude downwardly below the bottom of the cavity. There is no way to read the phrase in question without drawing the inference that the cavity is not coextensive with the fake tooth.

5. "retaining"

Foothills proposes that the term is not indefinite and should be read as "restricting motion of the tooth cap body relative to the tooth received in the cavity." Billy Bob proposes that the term is indefinite or, in the alternative, that it should be construed as "anchoring in place." Foothills cites Col. 3: 61-64 in support of its position, while Billy Bob cites Col. 3: 57-67.

The invention taken as a whole anchors the artificial tooth to the real tooth. The term "retaining" must be placed in the context of an entire phrase which reads, "a lip protruding from said inside surface under said cavity to form a trough at the bottom of said cavity and adapted for receiving and **retaining** an extremity edge of the person's real tooth . . . ." (emphasis added). In this context, plaintiff's proposed definition, "restricting motion of the tooth cap body relative to the tooth received in the cavity," is a better fit. This construction, incidentally, essentially matches the dictionary definition cited in Billy Bob's brief: "to keep or hold in a particular place, condition, or position. *Id.* at 16.

6. "a quantity that is more than enough to fill said cavity"

Foothills proposes that the phrase needs no construction. Billy Bob Teeth proposes that the phrase is indefinite under 35 U.S.C. § 112(2). I agree with Foothills. The Specification refers to this amount as "a first portion" or as "a dob." *E.g.,* Col. 3:24. How much is a "dob"? "A quantity that is more than enough to fill said cavity" is just that: enough that when the tooth cap is placed over the tooth, some of the thermoplastic material remains inside the cavity while some is displaced and extruded, thus permitting the user to form the displaced material over adjacent teeth before hardening. The Court finds and concludes that a person of ordinary skill in the art would not have difficulty understanding this concept, and that the finder of fact would not be aided by further construction from the Court.

7. "<u>formable</u>"

Foothills proposed in the Joint Claim Construction Statement that the term means "user formable onto user's teeth by using hands, teeth and/or with other means." Billy Bob proposes "for a user to form." The particular manner of the user's forming the displaced material around portions of adjacent teeth is not critical to the invention. The term means "formable by the user."

8. "<u>tooth</u>" and "<u>a tooth cap</u>"

See Construction 1.

9. "<u>comprising</u>"

See Construction 2.

10. "<u>that extends downwardly below the cavity to a tip</u>"

See Construction 4.

11. "<u>extending</u>"

Foothills proposes that no construction is needed. Billy Bob Teeth proposes "user spreading or stretching," citing the Specification at Col. 1: 57-59; Col 2. 24-31; Col. 3: 32-38; and Claims 1, 5, 6; and the original application filed on March 22, 1994; and three dictionary definitions in support of its position. At the hearing Foothills used the term "displaced" in regard to what happens with the malleable material. The Court found that term appealing then, as it does now. A person of ordinary skill in the relevant art, would not, as the Court does not, interpret extending to mean "user spreading or stretching" the material. That is the next step. "Extending" in context describes the displacement of a portion of the dob that was initially placed in the tooth cap body outside the tooth cap body when the real tooth enters the tooth cap body.

12. "<u>forming</u>"

Foothills proposes "user formable onto user's teeth by using hands, teeth and/or with other means." Billy Bob proposes "user forming." Foothills' concern, as expressed during the hearing, is that Billy Bob will attempt to limit the "user forming" language to forming with a person's hands. The Court does not read that limitation into the proposed definition. The Court accepts and adopts Billy Bob's proposed construction, which is consistent with the Court's construction of the term "formable" above.

13. "<u>hardening</u>"

Foothills proposes "allowing to harden." Billy Bob argues that the term is indefinite or, in the alternative, that it should be construed to mean "the act of making hard." Foothills cites Col. 1: 59 and the last step of claim 6 in support of its position. Billy Bob Teeth cites generally the lack of "distinctly identifie[d] boundaries" with regard to the term hardening. The Court is

not persuaded that the term is so indefinite as to be non-definable. The Court construes "hardening" to mean "gets harder."

14. "tooth"

See Construction 1.

15. "comprising"

See Construction 2.

16. "surface features"

Foothills proposes "features on cavity surface for being surrounded, filled in and enveloped by the malleable material so that the material firmly anchors and attaches itself to the tooth cap after the material hardens." Billy Bob proposes "(i) at least one ridge and at least one depression; (ii) at least two ridges; or (iii) at least two depressions." Foothills argues that Billy Bob Teeth's proposed definition improperly imports limitations from the specification into the claim and, in so doing, violates the doctrine of claim differentiation which states it "is improper for courts to read into an independent claim a limitation explicitly set forth in another claim." *Environmental Designs Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 699 (Fed. Cir. 1984).

This construction can reasonably be argued either way.

- The use of "ridges and depressions" is indicated in the Abstract.
- In the Summary of the Invention section of the Specification, the inventor states, "the present invention includes a tooth cap body having 'ridges and/or depressions' that can be anchored to a real tooth." Col. 1: 42-44.
- The section of the Specification describing the preferred embodiments uses several different wordings: (1) "[t]he cavity of the tooth cap body includes "varying surface features such as ridge(s) and/or depression(s)." Col. 3:5-6; (2)

14

"the ridges and the depressions (five times); Col. 3:13; Col. 3: 16; Col. 3:40; Col. 3: 47; Col. 3:50; (3) "each ridge . . . and each depression;" Col. 3:18-19; and (4) "ridge(s) and/or depression(s) (two times);" Col. 4:1; Col. 4: 10.

- There is no reference to "ridge," "ridges," "depression" or "depressions" in any independent claim in the '381 patent.
- Dependent claims 3 and 4 to independent Claim 1 refer to "a ridge" and "a depression" respectively.
- Independent Claim 6 is the only reference to "surface features" in the claims.
- Dependent Claims 8 through 12, all providing methods ultimately dependent to independent Claim 6, describes "surface features" as being "at least one ridge" (claim 8); "a plurality of ridges" (Claim 9); "at least one depression" (Claim 10); "a plurality of depressions" (Claim 11); and "at least one ridge" (Claim 12).

The Court concludes that what is fundamental to this invention is the presence of some alteration of the smooth interior surface of the tooth cap body that gives the malleable material something to form in or around to assist in securing the artificial tooth to the real tooth. No other type of surface feature than a ridge or a depression is described. The Court further finds from its consideration of the entire patent including the Specification and the Claims that the number of ridges or depressions, including the minimum number, is not fundamental to the invention, and to import the specific numbers into the claim would be an inappropriate limitation. To any extent that the doctrine of claim differentiation could be viewed as inconsistent with that construction, the Court finds that that doctrine does not prevail. *See Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1480 (Fed. Cir. 1998)("the doctrine of claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and

the prosecution history and any relevant extrinsic evidence."). *See also MarcTec v. Johnson & Johnson,* 394 Fed. Appx. 685, 687 (Fed. Cir. 2010)(citing *Multiform Desiccants* and affirming the district court's construction of an independent claim even if it rendered a term in a dependent claim superfluous). Therefore, the Court defines "surface features" to mean "one or more ridge or depression or both on the interior surface of the tooth cap body for the purpose of being surrounded, filled in or enveloped by the malleable material so that the material firmly anchors and attaches itself to the tooth cap after the material hardens."

17. "shaping"

Foothills proposes "[u]ser shaping onto user's teeth by using hands, teeth and/or with other means" and Billy Bob proposes "[u]ser shaping." Similar to "forming" Foothills fears Billy Bob will attempt to limit the manner of shaping to a process involving a user's hands. The Court does not read this limitation into the definition "user shaping" and accepts and adopts Billy Bob's proposed construction.

DATED this 13th day of February, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge